UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Dorothy L. Stafford

    v.                                                     Civil No. 19-cv-752-JL
                                                         Opinion No. 2020 DNH 173P

Andrew Saul, Commissioner
of Social Security

## ORDER ON APPEAL

Dorothy L. Stafford has appealed the Social Security Administration's ("SSA") denial of her application for a period of disability and disability insurance benefits. Stafford initially filed her application for benefits in 2014. The Administrative Law Judge ("ALJ") at the SSA denied her application for benefits under Title II of the Social Security Act, concluding that despite several severe impairments, Stafford retained the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy after the alleged onset date of her disability. See 20 C.F.R. §§ 404.1505(a), 416.905(a). The Appeals Council denied Stafford's request for review, so the ALJ's decision became the final decision on her application, see id. §§ 404.981, 416.1481.

Stafford then appealed the decision to this court, which vacated and remanded Stafford's case to the SSA for further proceedings after concluding that "the ALJ failed to provide sufficient reasons for rejecting the opinions of Stafford's treating sources." Stafford v. Berryhill, No. 17-CV-345-LM, 2018 WL 3029052, at *4 (D.N.H.

June 18,2018) (McCafferty, J.).  After another hearing, a new ALJ concluded that Stafford had no severe impairment or combination of impairments through her date last insured and accordingly denied her application.  Stafford now appeals this decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).  After careful consideration, the court denies Stafford's motion and grants the Acting Commissioner's motion.

## I. Applicable legal standard

The court limits its review of a final decision of the SSA "to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence."  Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  It "review[s] questions of law de novo, but defer[s] to the Commissioner's findings of fact, so long as they are supported by substantial evidence," id., that is, "such evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted).

## II. Background[1]

Stafford first applied for disability under Title II on April 5, 2014, alleging that she was disabled as of April 1, 2003.[2]  Her application was initially denied based on a lack of

---

[1] The court recounts here only those facts relevant to the instant appeal.  The parties recite the record facts more completely in their respective Statements of Material Facts (doc. nos. 8, 10).

[2] She also applied under Title XVI at the same time.  She has not challenged denial of that application.

evidence about her alleged disability prior to her date last insured, December 31, 2008. After a hearing, an ALJ found that, despite several severe impairments—including type II diabetes mellitus with peripheral neuropathy and degenerative disc disease of the lumbar spine—she had the RFC to perform jobs that exist in significant numbers in the national economy through her date last insured.[3] The Appeals Council denied review, rendering that decision final.

Stafford appealed that decision to this court, which vacated the Commissioner's decision and remanded the case for further proceedings. The court concluded that the ALJ erred at step four of the five-step process because he "failed to provide sufficient reasons for rejecting the opinions of Stafford's treating sources." Stafford, 2018 WL 3029052, at *4. Specifically, the ALJ rejected the opinions of two of Stafford's treating podiatrists, Billie Bondar and Kevin Riemer, as well as Dr. Nicole Warren, on grounds that those opinions "relate to a time period more than seven years after the date last insured."[4] But that rationale, as the court observed, conflicted with the assessments themselves, which indicated that Stafford's impairments existed since her date last insured. Stafford, 2018 WL 3029052, at *3. And the ALJ failed to resolve any ambiguity created by the present-tense discussion of Stafford's functional limitations on the opinion forms. Id. at *4.

---

[3] Admin. Rec. at 21-22.

[4] Admin. Rec. at 20.

On remand, a new ALJ invoked the requisite five-step sequential evaluation process anew in assessing Stafford's request for disability and disability insurance benefits. See 20 C.F.R. §§ 404.1520, 416.920. After determining that Stafford had not engaged in substantial gainful activity after the alleged onset of her disability (December 31, 2008) through her date last insured (also December 31, 2008) the ALJ analyzed the severity of her impairments.[5] At this second step, the ALJ concluded that Stafford had the medical impairment of "diabetes mellitus with peripheral neuropathy."[6] The ALJ then concluded, however, based on a review of the record evidence, that Stafford "did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months," and thus Stafford "did not have a severe impairment or combination of impairments" and thus was not disabled.[7] See 20 C.F.R. §§ 404.1509, 404.1520(a), and 404.1521. The Commissioner accordingly denied Stafford's application for benefits. She now appeals that decision.

### III. Analysis

To obtain disability benefits, Stafford must demonstrate that she has an "impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520. And she must

---

[5] Admin. Rec. at 2093.

[6] Id.

[7] Id. at 2093–101.

4

"demonstrate that [her] disability existed prior to the expiration of [her] insured status." Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986). The ALJ concluded that she did not have a severe impairment prior to her date last insured.

Stafford moves to reverse this decision on three grounds. First, she argues that the ALJ erred by limiting consideration of medical evidence supporting her disability to that from the 12-month period before her date last insured. Second, she contends that the ALJ erred in weighing her own testimony about her symptoms and limitations. Finally, she argues that the ALJ erred in weighing the opinion evidence in the record. Concluding that none of these alleged errors mandate remand, the court denies Stafford's motion and affirms the Commissioner's decision.

### A.     Evidence considered

To "determine whether a claimant meets the statutory definition of a disability," the Commissioner "shall consider all evidence available in [an] individual's case record, and shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability." Soc. Sec. Ruling, SSR 18-01p; Titles II & XVI: Determining the Established Onset Date in Disability Claims, SSR 18-01P, 2018 WL 4945639, at *4 (S.S.A. Oct. 2, 2018) ("SSR 18-01p") (quoting 42 U.S.C. 423(d)(5)(B)). In a case like this, where the ALJ must "determine when a claimant with a non-traumatic or exacerbating and remitting impairment first met the statutory definition of disability," the ALJ does so by

> review[ing] the relevant evidence and consider[ing], for example, the nature of the claimant's impairment; the severity of the signs, symptoms, and

5

>laboratory findings; the longitudinal history and treatment course (or lack thereof); the length of the impairment's exacerbations and remissions, if applicable; and any statement by the claimant about new or worsening signs, symptoms, and laboratory findings.

Id. at *6.

As an initial matter, Stafford does not point to any evidence prior to one year before her date last insured—that is, prior to December 31, 2007—that she claims contradicts the ALJ's findings.[8] Though she mentions her pancreatitis and bariatric surgery, which occurred over a year before her date last insured, she does not argue that these conditions limited her ability to function during the twelve months preceding her date last insured—the relevant period for a disability determination.[9]

Stafford argues that the ALJ erred, instead, by "reason[ing] that the medical records post-dating [her date last insured] are not relevant to the issue of disability prior to" that date and thus by failing to take into account medical records dated after December 31, 2008.[10] But the ALJ did account for later medical records and, accordingly, did not err.

First, she challenges the ALJ's explanation of which records are material. As the ALJ explained, "[p]ursuant to" the Social Security Administration's Hearings, Appeals, and Litigation Law Manuel (HALLEX), "the only material evidence is 'evidence dated within 12 months of the alleged onset date'" which in this case is December 31, 2008.

---

[8] See Mem. in Supp. of Mot. to Reverse (doc. no. 7-1) at 3–7.

[9] Id. at 7.

[10] Id. at 4.

6

Under this rubric, as the ALJ explained, "[t]he records dated prior to December 31, 2007 then are not material" and "[w]ith a date last insured of December 31, 2008, the records after that date are not material."[11] Strafford suggests that the ALJ erred by failing to consider evidence outside of this 12-month period that might support an inference of disability within that period.[12]

But the ALJ did consider evidence outside of this 12-month period for the purpose of "placing the claimant's current symptoms and limitations into context or . . . to determine consistency of subjective allegation with objective evidence."[13] Specifically, the ALJ addressed the EMG testing done in January 2009 and Stafford's records from February and October 2009.[14] He observed that, despite the EMG testing showing "a peripheral neuropathy 'most likely' due to diabetes," Stafford "still ambulated without assistance and had no change in her normal neurological examination findings" at that time and, as of October and November 2009, she reported "doing quite well" and being "extremely happy with her level of functioning."[15] And, the ALJ noted, despite the EMG result obtained the month after the relevant period, that "probably peripheral neuropathy did not significantly limit her ability to function" during the relevant period, "and,

---

[11] Admin. Rec. at 2090.

[12] Mot. to Reverse Mem. at 3–5.

[13] Admin. Rec. at 2090.

[14] Id. at 2096–97.

[15] Id. at 2097.

7

therefore, was non-severe."[16] He also considered evidence related to Stafford's orthopedic impairments from February 2009.[17] Accordingly, the ALJ did not err by failing to take into account medical evidence dated outside the 12-month period before Stafford's last insured.

Stafford then selectively cites the ALJ's explanation of material evidence and a portion of his colloquy with Dr. Kwock, arguing that the colloquy and the ALJ's "findings regarding Dr. Kwock's opinion testimony further demonstrate that the ALJ erroneously failed to consider whether medical evidence dated outside the twelve month period prior to Ms. Stafford's DLI supported an inference of disability prior to her DLI."[18] In response to a question from the ALJ, Dr. Kwock testified that, on December 31, 2018, "there would not be evidence to support" a severe limitation "for either the lumbar spine or the foot," and that "there's not that much evidence that would support either impairment" before that time.[19] But, accounting for later evidence, Dr. Kwock noted that "[t]he evidence that exists for those regions, that would be supportive of that type of things, started to show up around 2012 for lumbar spine and maybe 2014," but not before.[20] He also noted that "there is evidence of a diabetic neuropathy present

---

[16] Id.

[17] Id. at 2096–97.

[18] Mot. to Reverse Mem. at 6–7.

[19] Admin. Rec. at 2117.

[20] Id.

maybe, back to 2009;" that the neuropathy "would have been present" prior to December 30, 2008, based on results of an EMG test completed two weeks later, on January 12, 2009; and that Stafford "was not a stable diabetic" before the date last insured.[21]

Finally, Stafford argues that the ALJ erred by failing to consider the results of the EMG test and Dr. Kwock's testimony on its implications for Stafford's impairments prior to December 31, 2008.[22] But, as discussed supra, the ALJ addressed the results of the EMG test and the evidence of Stafford's diabetes outside of the one-year period before her date last insured. And Stafford points to no evidence, either in the record generally or in Dr. Kwock's testimony, that the ALJ failed to account for and that also supports the conclusion that Stafford's conditions were severe as of December 31, 2008. Accordingly, the ALJ did not err by improperly limiting his consideration of the medical evidence.

### B. Applicant's testimony

Stafford next argues that the ALJ erred by determining that objective medical evidence failed to support the extent of the symptoms of her impairment. In determining whether a claimant is disabled, the ALJ must "consider all [of the claimant's] symptoms, including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R.

---

[21] Id. at 2118–19.

[22] See Mot. to Reverse Mem. at 7.

§ 404.1529. A "symptom" is an "individual's own description or statement of his physical or mental impairment(s)." Social Security Ruling 16-3p ("SSR 16-3p") 2016 WL 1119029, at *3 (S.S.A. Mar. 16, 2016). In evaluating a claimant's symptoms, the ALJ first "consider[s] whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce" those symptoms, and then "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . ." Id. at *4.

The ALJ "must have objective medical evidence from an acceptable medical urce to establish the existence of" such an impairment. Id. at *3. The ALJ, further, should "consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and . . . evaluate whether the statements are consistent with objective medical evidence and the other evidence." Id. at *6.

Here, the ALJ determined, at the first step, that Stafford had a medically determinable physical impairment of diabetes mellitus with peripheral neuropathy.[23] Stafford testified that this impairment "had more than a minimal effect upon her functioning," in that, among other things, "she was unable to work due to back pain and needing to test her blood sugars, have snacks, maintain her personal care, and . . . move slowly and elevate her feet."[24] Stafford argues that the ALJ erred by concluding that the

---

[23] Admin. Rec. at 2093.

[24] Id. at 2094.

10

objective medical evidence did not support her statements claiming "an extremely limited range of functional abilities."[25] He should have proceeded to the next step in the analysis, Stafford contends, because her impairment (diabetes) could reasonably be expected to produce those symptoms.[26]

While the ALJ may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual," that is "one of the many factors" the ALJ may consider. Id. at *5. And the ALJ in this case did not rely solely on the absence of objective medical evidence in concluding that the record did not support the extent of impairment that Stafford claimed. He considered, among other factors: her daily activities of providing childcare as well as taking care of her own children, walking, and preparing meals; her lack of consistent complaints; reports that Stafford improved when she complied with her doctors' recommendations and yet often failed to do so; objective medical evidence that suggested a generally intact physical status; and the opinion of Dr. Kwock.[27] These are among the factors—known in the First Circuit as the Avery factors, see Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986)—that the ALJ may permissibly consider in evaluating the "intensity, persistence, and limiting effects of an individual's

---

[25] Id.

[26] Mot. to Reverse Mem. at 8–9.

[27] See Admin. Rec. at 2095–97.

11

symptoms." SSR 16-3P, 2017 WL 5180304 at *7-8. "As long as the Avery factors are explored during the administrative hearing and the ALJ provides specific reasons for any adverse credibility assessment, the ALJ complies with Avery and his findings are entitled to deference." Tellier v. US Soc. Sec. Admin., Acting Comm'r, No. 17-CV-184, 2018 WL 3370630, at *7 (D.N.H. July 10, 2018) (Barbadoro, J.). The ALJ did so here and, accordingly, did not err.

### C. Opinion evidence

Under the regulations applicable to this case,[28] the ALJ must "consider the medical opinions in [the] case record together with the rest of the relevant evidence" when making a disability determination. 20 C.F.R. § 404.1527(b). Stafford challenges the weight assigned by the ALJ to three categories of medical opinions in this case: (1) the opinions, issued in 2014, of state agency medical consultants who did not examine Stafford; (2) the opinion of Dr. Kwock, an orthopedic surgeon who reviewed the medical evidence in the case but did not examine Stafford; and (3) the opinions of three physicians who treated Stafford. Though Stafford is correct that the ALJ erred in weighing the state agency consultants' opinions, that error does not warrant remand. And the ALJ did not err in weighing the opinions of the treating physicians or Dr. Kwock.

**2014 opinions**. The ALJ considered and "accorded substantial weight" to the opinions of the state-agency reviewing physicians "in determining the claimant's residual

---

[28] Because Stafford filed her case before March 27, 2017, the ALJ weighs the various medical opinions. See 20 C.F.R. § 404.1527 (applying to cases filed before March 27, 2017).

functional capacity . . . ."[29] Those physicians found "insufficient evidence to evaluate" Stafford's claim "for benefits through the date last insured . . . ."[30] But as Stafford points out, and as the Commissioner concedes, those physicians did not review evidence from the relevant period—that is, prior to Stafford's date last insured.[31] And as the Commissioner further concedes, this was an error.[32] But it is not an error that requires remand.

As a general rule, "[i]f the state agency consultant reviewed only part of the record, the opinion cannot provide substantial evidence to support the ALJ's residual functional capacity assessment if later evidence supports the claimant's limitations." Ledoux v. Acting Comm'r, Soc. Sec. Admin., No. 17-CV-707-JD, 2018 WL 2932732, at *4 (D.N.H. June 12, 2018) (DiClerico, J.). As the Commissioner observes, of course, the ALJ here relied on these opinions not as part of a step-four RFC analysis, but at step two, to determine that Stafford's medical impairments were not severe.[33] But the same analysis applies to a step-two determination because, when the ALJ relies on the opinion of a reviewing expert who failed to review relevant evidence, "[t]he Court does not know whether the non-examining state agency physicians would have rendered the same Step 2

---

[29] Admin Rec. at 2100.

[30] Id.

[31] See Mot. to Reverse Mem. at 12–13; Mem. in Supp. of Mot. to Affirm (doc. no. 9-1) at 16–17.

[32] Mot. to Affirm Mem. at 16.

[33] Mot. to Affirm Mem. at 16–17.

opinions if they had all of the medical evidence." Mary K v. Berryhill, 317 F. Supp. 3d 664, 668 (D.R.I. 2018) (McConnell, J.).

Though the ALJ ought not have afforded "substantial weight" to the opinions of state-agency experts who did not review evidence in the relevant timeframe, his decision remains supported by substantial evidence. Specifically, Stafford does not point to any specific evidence pre-dating her date last insured that would support a determination that her limitation was severe, even had the state-agency experts reviewed it. And even if the ALJ had afforded these opinions no weight, substantial evidence in the form of Dr. Kwock's opinion would still support his step-two decision.

**Dr. Kwock**. The ALJ found "somewhat pervasive" and gave "some weight" to the opinion of Dr. Kwock, a board-certified orthopedic surgeon. Dr. Kwock "reviewed the entire record" before testifying that, as of December 31, 2008—Stafford's date last insured—"there would not be evidence to support" limitations based on impairments "for either the lumbar spine or the foot" because, before 2012, "there's not that much evidence that would support either impairment."[34] He acknowledged "evidence of a diabetic neuropathy present maybe, maybe to 2009" based on the "EMG done of the lower extremities," which showed "evidence of a distal frontal sensory peripheral neuropathy present[,] most likely secondary to her history of diabetes," on January 12, 2009.[35] And,

---

[34] Admin. Rec. at 2100, 2117.

[35] Id. at 2117.

he further acknowledged, in light of the EMG result in January 2009, "the neuropathy would have been present" on or before December 31, 2008.[36]

Stafford contends that the ALJ erred by relying on Dr. Kwock's opinion because that opinion was based "upon evaluation <u>only</u> of the objective medical evidence of record <u>solely</u> during the twelve-month period prior to" Stafford's date last insured.[37] But Dr. Kwock testified that he reviewed the entire record, and then testified that the record did not support impairments prior to Stafford's date last insured, even though he acknowledged that the peripheral neuropathy "would have been present" before her date last insured. His evaluation therefore accounted for objective medical evidence of record outside of that twelve-month period, and the ALJ did not err by relying on his opinion as a result.

Stafford also contends that the ALJ "appears to have erroneously discounted Dr. Kwock's acknowledgement that the evidence of record supported work-related limitations caused by diabetes and peripheral neuropathy prior to" Stafford's date last insured.[38] But, as explained above, while Dr. Kwock acknowledged "evidence of a diabetic neuropathy" in the EMG results in January 2009, and suggested its existence before December 31, 2008, he did not testify concerning any work-related limitations

---

[36] <u>Id.</u>

[37] Mot. to Reverse Mem. at 11 (emphasis in original).

[38] <u>Id.</u> at 12.

caused by the peripheral neuropathy prior to that date.[39] To the contrary, he testified that there was not objective evidence supporting such limitations as of that date.[40]

Finally, Stafford argues that the ALJ erred in relying on Dr. Kwock's opinion because Dr. Kwock "admitted that he had no expertise to offer an opinion regarding Ms. Stafford's pancreatitis impairment or the medical conditions that arose as a result of her bariatric surgery prior to her DLI . . . ."[41] The ALJ concluded that Stafford's "episodes of pancreatitis predate the relevant time period by a number of years and resolved prior to the alleged onset date," and thus did not "constitute a medically determinable impairment during the relevant time period."[42] But her pancreatitis and complications from gastric bypass were discussed only in her past history and noted as "improved" in December 2007 after a stent placement, which supports the ALJ's conclusion. And Stafford does not point to any evidence to the contrary or supporting her contention that these conditions continued into the relevant time period. Accordingly, the ALJ did not err in his reliance on Dr. Kwock's opinion despite Dr. Kwock's acknowledged lack of expertise in that area.

**Treating physician opinions**. Finally, Stafford challenges the ALJ's weighing of the opinions of three treating physicians—Billie Bondar, D.P.M., Nicole Warren, M.D.,

---

[39] Admin. Rec. at 2118.

[40] Id. at 2117.

[41] Mot. to Reverse Mem. at 11–12.

[42] Admin. Rec. at 2097.

16

and Dominica Costello, DO.[43] The ALJ gave these opinions "no weight," finding them of "little persuasive value" with respect to whether Stafford had severe impairments before her date last insured.

Dr. Bondar treated Stafford for ingrown toenails beginning in 2003. He opined in April 2016 that her impairments had "likely" existed before December 31, 2008, and that her neuropathy had existed since 2003.[44] Though Dr. Bondar opined that Stafford was subject to several functional limitations as of April 2016, his opinion does not indicate which—if any—of those limitations stemmed from her neuropathy or were present prior to December 31, 2008.[45] When "the opinions at issue are worded in the present tense without any retrospective component," as Dr. Bondar's is with respect to Stafford's limitations, they "purport to assess plaintiff's functioning at the time they were rendered." Whitehead v. Astrue, No. 11-11292, 2012 WL 5921045, at *6 (D. Mass. Nov. 26, 2012) (Zobel, J.). And nothing in Dr. Bondar's treatment notes indicated any treatment for, complaints of, or limitations due to peripheral neuropathy during the one-year period before December 31, 2008. The ALJ thus did not err, as Stafford suggests, in affording no weight to Dr. Bondar's opinion concerning the severity of her impairment during the relevant period.

---

[43] Mot. to Reverse Mem. at 13–14.

[44] Admin. Rec. 1967–68.

[45] Id. at 1968–71.

Dr. Warren treated Stafford for diabetes and neuropathy, among other things, beginning in 2009, though no treatment notes from Dr. Warren appear in the record until 2014. She opined that it was "unknown" whether Stafford's limitations had "existed since December 31, 2008," and offers no opinion about Stafford's limitations before December 31, 2008, because Stafford had not been a patient until 2009.[46] And like Dr. Bondar's opinion, Dr. Warren's is phrased in the present tense, thus purporting to assess her functional limitations as of April 2016. Whitehead, 2012 WL 5921045, at *6. The ALJ thus did not err in discounting Dr. Warren's opinion concerning Stafford's limitations during the period leading up to her date last insured because Dr. Warren did not opine whether Stafford's limitations existed during that time.

He further did not err in discounting Dr. Warren's opinion to the extent that opinion contradicted Dr. Warren's own treatment notes in the period during which she treated Stafford. See Figueroa v. Astrue, No. 11-CV-100-PB, 2012 WL 2090517, at *7 (D.N.H. June 7, 2012) (Barbadoro, J.) (inconsistency between opinion and treatment notes constitute "good reasons" to discount treating physician's opinion). Though Dr. Warren opined that Stafford suffered "neuropathic pain in the extremities daily,"[47] for example, her notes from the period during which she treated Stafford contradict that opinion, observing that: she was in no acute distress and had intact sensation;[48] her pain

---

[46] Admin. Rec. at 2082–83.

[47] Admin. Rec. at 2082.

[48] Id. at 1581.

was out of proportion with her examination findings;[49] and her blood pressure was normal.[50]

Finally, Dr. Costello's form opinion states that she saw Stafford every three months beginning in 2006,[51] though the record evidence suggests that she began seeing Stafford in November 2009.[52] The ALJ afforded no weight to Dr. Costello's opinion because Dr. Costello opined only that the indicated limitations had existed "since" December 31, 2008, not before that date.[53] The ALJ did not err in doing so, because, like Dr. Warren, Dr. Costello did not opine concerning Stafford's limitations during the relevant period.

## IV. Conclusion

For these reasons, the Acting Commissioner's motion to affirm[54] is GRANTED and Stafford's motion to reverse and remand the Acting Commissioner's decision[55] is DENIED. The Clerk of Court shall enter judgment in accordance with this order and close the case.

---

[49] Id. at 1584.

[50] Id. at 1576, 1583.

[51] Id. at 3494.

[52] Id. at 1376.

[53] Id. at 2100.

[54] Doc. no. 9.

[55] Doc. no. 7.

**SO ORDERED.**

/s/ Joe Laplante
Joseph N. Laplante
United States District Judge

Dated: October 1, 2020

cc: D. Lance Tillinghast, Esq.
     Amy C. Bland, Esq.